## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**CHRISTINE MCKINNEY**,
*individually and on behalf of a class*
*of similarly situated persons*,

   *Plaintiff*,

  v.

**EQUIFAX INFORMATION
SERVICES, LLC,**

   *Defendant*.

Case No:

**JURY TRIAL DEMANDED**

---

### CLASS ACTION COMPLAINT

  COMES NOW the Plaintiff, **Christine McKinney**, ("**Ms. McKinney**"), on behalf of herself and all similarly situated individuals, by and through her attorneys, Seraph Legal, P.A., and complains of the Defendant, **Equifax Information Services, LLC** ("**Equifax**"), stating as follows:

### DESCRIPTION OF THE CASE

  1.  This is an action against Equifax for violation of the ***Fair Credit Reporting Act***, 15 U.S.C. § 1681, *et. seq.* ("**FCRA**").

  2.  Pursuant to the FCRA, 15 U.S.C. § 1681g(a), upon request from a consumer, Equifax must clearly and accurately disclose all of the information in the consumer's file at the time of request. Despite this, Equifax frequently provided information which was materially false and which was not actually contained in consumers' credit files. In the instant matter, it provided a consumer disclosure to Ms. McKinney which falsely identified a debt collector as the purported "original creditor" of

a debt, instead of providing the true name of the original creditor as reported by the debt collector – information which Equifax had in its file. Indeed, Equifax provided the true name of the original creditor in reports which it sold to third parties regarding Ms. McKinney.

3.     Equifax's failure to correctly list the names of original creditors in disclosures which it made to consumers, and its false representation of debt collectors as the original creditors, renders it almost impossible for consumers to identify the debts and distinguish genuine debts from erroneous accounts on their credit reports.

4.     In enacting the FCRA, Congress recognized that "consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit." *See* 15 U.S.C. 1681(a)(3). The purpose of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures … in a manner which is fair and equitable to the consumer, with regard to … accuracy …" *See* 15 U.S.C. 1681(b). To carry out its intentions, Congress included in the statutory scheme a series of due-process-like protections that impose strict procedural rules on consumer reporting agencies.

## JURISDICTION AND VENUE

5.     Federal subject matter jurisdiction exists pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331, as the Plaintiff brings her action under the FCRA, a federal statute.

6.     Equifax is subject to the provisions of the FCRA and to the jurisdiction of this Court pursuant to Fed. R. Civ. P. 4(k)(1)(A) and Section 48.193, Florida Statutes.

7.     Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §1391(b)(2) because therein: (i) a substantial part of the events giving rise to the claims

and damages occurred; (ii) Plaintiff resides; and (iii) Defendant transacts business.

**PARTIES**

8.      **Ms. McKinney** is a natural person residing in Tampa, Hillsborough County, Florida, and is a consumer as defined by the FCRA, 15 U.S.C. 1681a(c).

9.      **Equifax** is a Georgia limited liability company, with a primary business address of 1550 Peachtree Street NW, Atlanta, GA 30309.

10.     Equifax is registered as a foreign limited liability company in the state of Florida, where its registered agent is **Corporation Service Company, 1201 Hays St., Tallahassee, FL 32301.**

11.     Equifax is a nationwide *Consumer Reporting Agency* ("**CRA**") within the definition of 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, and/or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information on consumers, for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically the mail and internet.

**FACTUAL ALLEGATIONS**

**Equifax's Obligations Under 15 U.S.C. § 1681g(a)**

12.     On or about July 2, 2017, Ms. McKinney requested a copy of her consumer credit disclosure from Equifax through the website, www.annualcreditreport.com.

13.     Pursuant to 15 U.S.C. § 1681g(a), upon receipt of Ms. McKinney's

request, Equifax was required to "clearly and accurately" disclose all information in her file at the time of request, with limited exceptions, none of which are applicable to this matter.

14.     A consumer disclosure "must be made in a manner sufficient to allow the consumer to compare the disclosed information from the credit file against the consumer's personal information in order to allow the consumer to determine the accuracy of the information set forth in (her) credit file." *Gillespie v Equifax Information Services, LLC*, 484 F.3d 938, 947 (7th Cir. 2007).

### Equifax's Disclosure to Ms. McKinney

15.     Equifax delivered its consumer disclosure ("**Equifax's Disclosure**") to Ms. McKinney, electronically, at her home in Tampa, Hillsborough County, Florida.

16.     Equifax's Disclosure indicated that Ms. McKinney's credit file contained a collection account, under the heading: "Collections."  **SEE PLAINTIFF'S EXHIBIT A.**

17.     Equifax's Disclosure describes this section of the report as follows:

> "Collections are accounts with outstanding debt that have been placed **by a creditor** with a collection agency. Collections stay on your credit report for up to 7 years from the date the account first became past due. They generally have a negative impact on your credit score." *Id*. (**Emphasis not original**).

### The Hunter Warfield Account

18.     The account listed under the "Collections" section stated that the "Original Creditor Name" was "HUNTER WARFIELD, INC." *Id.*

19.     Hunter Warfield, Inc. ("**Hunter Warfield**") is a debt collector whose business consists of the collection of debts allegedly due to others.

20.     Hunter Warfield does not provide consumer financing and is thus not the original creditor of the account.

21.     On information and belief, Hunter Warfield reported to Equifax that an apartment rental debt of $4,552 was owed to an original creditor known as "Camden Bay."

22.     However, Equifax's Disclosure to Ms. McKinney did not reveal the actual original creditor's name reported to it by Hunter Warfield, or any other information which would allow Ms. McKinney to understand the origin of the reported debt.

23.     On information and belief, the name of the original creditor for the account was contained in Equifax's file regarding Ms. McKinney, and was properly included in the reports which Equifax sold to third-parties regarding Ms. McKinney.

24.     Providing a disclosure which conflates the name of the debt collector with the name of the original creditor is neither clear nor accurate, and prevents the consumer from comparing the information in the report to her own records, impairing her ability to review and correct her credit file.

25.     The plain language of Equifax's Disclosure would cause a reasonable consumer to believe that "Hunter Warfield Inc." claimed that she had incurred a debt directly to it, since this is exactly what the disclosure states.

### Importance of Reporting the Original Creditor

26.     The *Credit Reporting Resource Guide*, published by the **Consumer Data Industry Association** ("**CDIA**"), a trade association representing the CRAs, including Equifax, states:

**The purpose of reporting the original creditor name is to help consumers identify the source of accounts when they appear on credit reports.** Without the original creditor names, consumers may not know what the accounts represent. (*Emphasis original*). **SEE PLAINTIFF'S EXHIBIT B.**

27.    The *Credit Reporting Resource Guide* instructs debt collectors to "(r)eport the name of the company/creditor that originally opened the account for the consumer." ***Id.***

28.    On information and belief, Hunter Warfield reported the above-referenced collection tradeline to Equifax in compliance with the *Credit Reporting Resource Guide*.

<u>**Prevalence of Equifax's Errors; Article III Standing**</u>

29.    On information and belief, Equifax's Disclosure to Ms. McKinney was generated using a template which extracts database information from a consumer's file and populates it into various pre-programed fields on a consumer disclosure form.

30.    On information and belief, this same template is used virtually *every time* a consumer requests their file from Equifax through www.annualcreditreport.com.

31.    Thus, every consumer with one or more collection accounts who requested their disclosure from Equifax received a consumer disclosure with the same errors as Ms. McKinney's, throughout the period during which this template was used.

32.    Upon information and belief, approximately 15% of the adult population in the United States, with a consumer credit history, has one or more collection accounts appearing on their report.

33.    Many consumers request their free annual credit disclosure from Equifax pursuant to the FCRA, particularly after Equifax's September 2017 revelation that the data for over 100 million consumers had been stolen from its files by hackers.

34.    Thus, a very large number of consumers have received defective disclosures from Equifax wherein a debt collector is wrongly identified as the "original creditor."

35.    Consumers concerned about possible identity theft from the Equifax data breach who pulled their consumer disclosures from annualcreditreport.com were falsely informed that they owed debts to "original creditors" of whom they had no knowledge.

36.    These consumers are likely to conclude that they were the unfortunate victims of identity theft or fraud, when they were not.

37.    As a result, Equifax's failure to clearly and accurately communicate the correct name of the original creditor has caused stress, anxiety, and fear in many consumers.

38.    Consumers have a right to the full disclosure of the contents of their Equifax file upon demand, at least once a year, and without charge, and it must be presented clearly and accurately. *See* 15 U.S.C. § 1681j.

39.    Equifax's failure to accurately disclose the information within its files deprived Ms. McKinney and her fellow class members of this right.

40.    The failure of an entity to provide accurate and truthful information as required by law creates an injury-in-fact, thus creating standing pursuant to Article III; *see*, *e.g.*, *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), holding "alleged injury to (plaintiff's) statutorily created right to truthful housing information" was a cognizable injury in and of itself, regardless of whether the plaintiff actually hoped to reside in the defendant's housing complex; therefore "the Art. III requirement of injury in fact [was] satisfied."

41.     Further, Equifax's failure to truthfully and accurately provide the contents of Ms. McKinney's own, personal credit file creates a particularized injury, as well as a tangible injury, since she was entitled pursuant to the FCRA to be given, free of charge, a copy of her consumer disclosure containing all information in her credit file, and yet was provided with a disclosure which not only omitted information but contained falsehoods which were not actually contained in her credit file.

## CLASS ACTION ALLEGATIONS

42.     Plaintiff brings this matter as a Class Action, pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3), on behalf of herself and the following Class:

**All natural persons residing in the State of Florida:**

**(a)     who, within two years of the date of the filing of this complaint, received a consumer disclosure from Equifax; and,**

**(b)     whose consumer disclosures evidenced one or more collection tradeline(s) in which Equifax stated that the debt collector was the original creditor, when such was not the case.**

43.     Plaintiff reserves the right to amend the definition of the Class based on subsequent discovery or legal developments.

44.     **Numerosity.    Fed. R. Civ. P. 23(a)(1).** The Class members are so numerous that joinder of all of them is impractical as Plaintiff believes that there are at least ten thousand (10,000) similarly-situated persons.  Equifax is one of the largest consumer credit reporting agencies in the nation and its reports are frequently used in consumer credit, employment, and insurance transactions. Florida is the third most populous state in the nation.  Although the precise number of Class members is unknown,

the names and addresses of potential Class members are identifiable through documents and business records maintained by Equifax.

45.    **Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).**   There are questions of law and fact that are common to the Class and which predominate over questions affecting any individual class member. Specifically, these common questions include, without limitation:

(a)    whether failing to disclose the true identity of the original creditor of an account on a consumer's credit report constitutes a failure of providing "all information in the consumer's file at the time of request"; and,

(b)    whether such failure constitutes a violation by Equifax of 15 U.S.C. §1681g(a)(1), supporting the award of  damages to the aforementioned class of consumers under the FCRA.

46.    **Typicality.  Fed. R. Civ. P. 23(a)(3).**   Plaintiff's claims are typical of the claims of each Class member, which all arise from similar operative facts and are based upon the same legal theories.  Equifax produced a consumer disclosure for Plaintiff which, on information and belief, was generated using a template and is substantially similar to disclosures received by thousands of other Florida consumers.  Plaintiff has no interest which is adverse or antagonistic to the interests of other members of the Class, and has the same claims for statutory and actual damages that she seeks for absent Class members.

47.    **Adequacy of Class Representation.  Fed. R. Civ. P. 23(a)(4).**   Plaintiff is an adequate representative of the Class and will fairly and properly protect the interests of the Class.  Plaintiff has retained experienced counsel who have litigated well over one

hundred consumer cases under the FCRA, as well as many other cases under other consumer-protection statutes, including the Fair Debt Collection Practices Act, Telephone Consumer Protection Act, Florida Consumer Collection Practices Act, Rosenthal Fair Debt Collection Practices Act, and other similar consumer protection statutes, are competent in the prosecution of class action litigation, and intend to prosecute this action vigorously.  Plaintiff and her counsel will fairly and adequately protect the interests of members of the Class.

48.    **Predominance and Superiority.  Fed. R. Civ. P. 23(b)(3).**  Questions of law and fact common to the Class members predominate over questions affecting only individual Class members. Under the totality of the circumstances, a Class Action is superior to other available methods for the fair and efficient adjudication of the controversy.  Equifax's conduct described in this Complaint stems from common and uniform practices, resulting in systematic violations of the FCRA.  Members of the Class do not have an interest in pursuing individual claims against Equifax as the amount of each Class member's individual claim is small compared to the expense and burden of individual prosecution.  Class certification will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Equifax's practices. Moreover, management of this action as a Class Action will not likely present any difficulties.  In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

49.    Absent a Class Action, the Class members will continue to have their rights violated and will continue to suffer monetary and other damages.

50.     Defendant's actions are generally applicable to the entire Class and accordingly, the relief sought is appropriate with respect to the entire Class.

51.     All conditions precedent to this action have occurred, been satisfied, or waived.

## COUNT I
## VIOLATIONS OF THE FCRA

52.     Ms. McKinney adopts and incorporates paragraphs numbered 1 – 51 as if fully stated herein.

53.     Equifax violated 15 U.S.C. § **1681g(a)(1)** in that Equifax, upon Ms. McKinney's request for a copy of her credit file, failed to clearly and accurately disclose to Ms. McKinney, a consumer, all of the information in her file at the time of the request. Specifically, Equifax failed to disclose the name of the original creditor in the tradeline reported by Hunter Warfield, and falsely stated that a debt collector was the original creditor of the subject debt, when this was untrue.

54.     Equifax's file contained the correct identity of the original creditor at the time of Ms. McKinney's request and such information was required to be disclosed to Ms. McKinney clearly and accurately, pursuant to 15 U.S.C. § **1681g(a)(1)**.

55.     Equifax knowingly provided this inaccurate information in Ms. McKinney's disclosure, or alternatively, proceeded with a reckless disregard for her rights by utilizing procedures which it knew or should have known to be insufficient to ensure the requisite accuracy in its reports.

56.     Equifax's errors constitute a willful failure to fulfill its duty to clearly and accurately disclose to Ms. McKinney all of the information in her file at the time of the

request, in contravention of 15 U.S.C. § **1681g(a)(1).**

57.    Pursuant to 15 U.S.C. § 1681n(a)(1)(A), Equifax is liable for actual damages or statutory damages of not less than $100 or more than $1,000 per incident per class member for each willful violation of the Act.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and the Class pray for relief as follows:

A.    An order certifying this case as a class action on behalf of the proposed Class under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

B.    An award of statutory, actual, and punitive damages for the Class members;

C.    An award of pre-judgment and post-judgment interest as provided by law;

D.    An award of attorneys' fees and costs; and,

E.    Such other relief as the Court deems just and proper.

## <u>JURY TRIAL DEMANDED</u>

Ms. McKinney hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 30th day of May, 2019, by:

| | | |
|---|---|---|
| <u>/s/ *Thomas M. Bonan*</u> | <u>/s/ *Bryan Geiger*</u> | <u>/s/ *Philip R. Goldberg*</u> |
| Thomas M. Bonan | Bryan J. Geiger | Philip R. Goldberg |
| Florida Bar # 118103 | Florida Bar # 119168 | Florida Bar # 105940 |
| TBonan@SeraphLegal.com | BGeiger@SeraphLegal.com | PGoldberg@SeraphLegal.com |

**SERAPH LEGAL, P.A.**
2002 E. 5th Ave., Suite 104
Tampa, FL 33605
Tel: 813-567-1230
Fax: 855-500-0705
Counsel for Plaintiff

**<u>EXHIBIT LIST</u>**

**A**      **Ms. McKinney's Equifax Credit Report – July 2, 2017 – Excerpt**
**B**      **Excerpt from the Credit Reporting Resource Guide**